## FLANIGAN v. DITTO, Inc.
### No. 6043.

Circuit Court of Appeals, Seventh Circuit.
June 18, 1937.
Rehearing Denied Aug. 6, 1937.

Carl V. Wisner and Carl V. Wisner, Jr., both of Chicago, Ill., for appellant.

Arthur W. Carlson and Max W. Zabel, both of Chicago, Ill., for appellee.

Before EVANS, SPARKS, and MAJOR, Circuit Judges.

**2**

SPARKS, Circuit Judge.

This appeal involves appellant's bill for an injunction and an accounting. At the close of the evidence the court dismissed the bill for want of equity. Appellee offered no evidence, and the issue is whether, as a matter of law, upon the bill and the evidence in support of it, a decree should have been entered for appellant. The facts leading up to this controversy are fully set forth in Flanigan v. Ditto, Inc. (C.C.A.) 84 F.(2d) 490.

Appellant, an inventor, first went into the employ of appellee in October, 1910, under a contract which is not here material. It is sufficient to say that appellee was organized to exploit appellant's inventions in the hectograph duplicating field, and under this first contract appellant was to be, and was, paid certain royalties on appellee's sales.

A second contract, referred to therein as supplemental to the first contract, was entered into by the parties on July 25, 1915, under which appellant's royalties were increased, and he agreed to transfer to appellee all improvements made by him on his patents during the life of the contract, and all patent applications covering the same. Appellant's patents which covered appellee's products were due to expire in 1927 and 1929. This fact caused the parties to enter into a third contract, on January 15, 1924, the alleged violation of which forms the basis of this action.

Under the last contract appellant agreed to design and build a new model duplicating machine at his own expense, which would not be a mere improvement in details over the old one. He further agreed to relinquish his royalties while thus engaged. The machine was to be different in details, and superior in operation and construction to the then existing machines. It was to embody improvements on which valid patents could be obtained, and would overcome defects existing in the machines and devices then being sold by appellee. Appellant further agreed to submit the completed machine to appellee, together with a proposition under which he would transfer to appellee all rights in it. If it was not accepted within six months after submission, the new machine and all rights respecting letters patent on it were to belong to appellant. The machine and proposition were submitted to appellee but were never accepted.

Subsequently appellee filed a bill against appellant for specific performance, in which it sought to compel appellant to transfer to it his patent applications upon the new model machine, under the terms of the second contract. This was upon the theory that the new model was a mere improvement in details over the old machine. That issue was decided adversely to appellee, and the court decreed that appellant was the "sole and exclusive owner of the entire right, title and interest in, to and under said model machine, and the inventions and improvements contained therein and all rights respecting letters patent appertaining thereto. * * *"

Subsequently, on July 31, 1931, appellant sued appellee at law for the invasion of his rights in the new machine under the last contract. Of the ten counts relied upon therein the court directed the jury to find for appellee on all but the sixth. That count, in addition to the facts above stated as to the last contract and its performance, further alleged that by the terms of that contract appellee promised that if it rejected the proposition, it would not manufacture and sell any machines embodying any of the novel features of the new machine; that after inventing and developing the new machine which involved novel features representing patentable invention, and which involved material changes and additions and overcame existing defects in the old machine, appellant submitted it on November 25, 1924, with his proposition of transfer to appellee, who declined to accept it; that subsequent thereto, in violation of his promises in the last contract, appellee manufactured and sold duplicating machines embodying certain of the novel features of the new machine to appellant's damage. The court directed the jury to find the issues for appellant on count 6 and to assess his damages at one dollar. The jury complied with the court's instructions with respect to all the counts, and judgment was rendered accordingly.

From this judgment appellant appealed, but appellee did not. That judgment was affirmed by this court in Flanigan v. Ditto, Inc., 84 F.(2d) 490, 495. The opinion by Judge Alschuler quite agreed with all the rulings of the District Court which were adverse to appellant. However, it condemned the court's ruling and judgment in appellant's favor on the sixth count, but was powerless to correct the er-

ror because appellee had not appealed. The court there said:

"The only evidence offered to establish the promise alleged in the count was the third contract itself. This contract contains no provision, as alleged in the count, that Ditto agreed that in case it did not accept the new duplicator and the proposed terms it would not at any time thereafter manufacture and sell the duplicator, unless indeed such a promise may be inferred, as was appellant's contention in argument. We do not think such promise can properly be inferred. Flanigan might have presented as his new machine a contrivance as old as the hills and well known to those familiar with the art, and if merely because Ditto refused to accept it upon the proposed terms Ditto was ever after barred from making use of it, a handicap would be thus placed upon Ditto which the contract does not by its terms impose, and which is not inferable therefrom. Besides, it does not appear from the evidence that Ditto made any drawings of the model, or did anything by reason of, or induced by, the submission of the model during the several years which intervened between the submission of the model and the disclosure through the patent.

"The count being predicated upon an agreement by Ditto never to make or use the machine, and no such agreement appearing from the evidence, in our judgment the count falls for want of evidence to sustain it.

"Although the court directed a nominal recovery on this count, in our judgment a directed verdict thereon for appellee would have been warranted; but since appellee took no appeal, the verdict as to this count may not be disturbed."

The judgment gives us no information as to the basis upon which nominal damages were allowed. The record of that case, which was admitted as evidence in this case, discloses, however, some pertinent facts which seem to us to throw light upon the court's ultimate conclusion. At the close of all the evidence the court and the attorneys had the following colloquy:

"Mr. Z: Count 6 charges us only with having violated the novel features of that machine representing patentable inventions. That is what the count alleges. Now then, there has been no proof before the court

that we have violated any novel inventions if any there were.

"The Court: I do not so interpret that count.

"Mr. Z: That is exactly what the count says.

"The Court: Do you consent to that Mr. W.?

"Mr. W: No.

"Mr. Z: Well may I read the count?

"The Court: Let me have it. * * * (After reading) The language does seem to indicate that.

"Mr. Z: Absolutely, your Honor, and if you will read the concluding paragraph you will find that is the only charge.

"The Court: Bring in the jury, Mr. Bailiff."

Thereupon the jury was instructed as hereinbefore set forth.

It is true, the court also made statements earlier in the case which in some respects were inconsistent with its statement here referred to, but those statements were made at the close of appellant's evidence, and before its attention had been directed to the specific allegations of count 6. The colloquy just quoted clearly indicates that prior to that time it had misinterpreted count 6. Nevertheless, appellant urges that the verdict and judgment bound appellant not to use any of the structural features of the new model, regardless of whether or not they were covered by the patent. This contention is based on the allegation in count 6 that if the proposition were rejected by appellee it "would not manufacture and sell any machines embodying any of the novel features of said new machine," appellant contending that "novel features" refers to unpatentable as well as patentable features. Of course, as this court has heretofore said, there is no such provision in the contract as that just quoted, nor is there any language from which it can be implied. 84 F.(2d) 490.

Under these circumstances, appellant instituted this action to enjoin appellee from manufacturing, using and selling hectograph duplicating machines, embodying or including (1) means or device for winding forward and backward by the same winding handle the gelatin duplicating rolls in connection with said duplicating machines, (2) a means or device for automatically moistening said gelatin duplicating

rolls, (3) a means or device comprising an automatic margin bar, activated in both directions by a cam, or (4) a carriage in connection with the duplicating machine, operated upon two trackways. He further asked for an accounting of profits and benefits derived by appellee from its manufacture, use and sale of such machines, and that appellee be charged therewith.

The court found and concluded (1) that the improvements covered by the last contract were limited to those upon which valid patents could be obtained, and (2) that the patentable improvements embodied in the model machine built by appellant as a result of the last contract were limited to and defined by the valid claims of the following United States patents to appellant: No. 1,633,804 issued June 21, 1927; No. 1,687,157 issued October 9, 1928; and No. 1,703,140 issued February 26, 1929. The court further concluded that the judgment at law in the second suit did not change or affect the construction of the last contract as set forth in conclusions 1 and 2; that the complaint did not set forth a cause of action, and that appellee was entitled to a decree of dismissal with costs. The decree followed the conclusions.

Appellant's primary contention is that the court erred in holding that the last contract could not be construed to cover the alleged novel features on which patents were not obtained.

■■ The patents referred to in the conclusions of law were those which appellant secured on his new model under the last contract, and they will be presumed to cover every feature of the new model that was patentable. They are not in the record. Nor does the record disclose that any of the means, the use of which is sought to be enjoined by this action, are covered by those patents. This is not an infringement case nor does appellant seek to recover for fraudulent use of confidential disclosures prior to the issuance of the patents. Hence, after issuance appellee was entitled to make use of any disclosure of the new model which was not covered by the patents, unless it had precluded itself from so doing by the terms of the last contract.

It is urged by appellant that appellee is thus precluded by that contract, as construed in the second suit, wherein appellant recovered nominal damages under count 6 of the complaint, and that that

judgment is res adjudicata as to the question here raised.

■ In Russell v. Place, 94 U.S. 606, 608, 24 L.Ed. 214, the Court said:

"It is undoubtedly settled law that a judgment of a court of competent jurisdiction, upon a question directly involved in one suit, is conclusive as to that question in another suit between the same parties. But to this operation of the judgment it must appear, either upon the face of the record or be shown by extrinsic evidence, that the precise question was raised and determined in the former suit. If there be any uncertainty on this head in the record,—as, for example, if it appear that several distinct matters may have been litigated, upon one or more of which the judgment may have passed, without indicating which of them was thus litigated, and upon which the judgment was rendered,— the whole subject-matter of the action will be at large, and open to a new contention, unless this uncertainty be removed by extrinsic evidence showing the precise point involved and determined."

The use of four different structural features was challenged in that suit, including a particular cam feature, upon which that judgment might possibly have been based, but which is not complained of in this action. The structures of which appellant now complains are not the same as those of which he complained in his first suit, and it was admitted at the last trial that it was an open question as to whether the accused machines were made in violation of the last contract. There was also an allegation in the complaint that appellee had agreed not to use any of the novel features of the new model. However, aside from the disclosures of the patents, there was an absence of proof as to what, if any, features were novel. Under these circumstances, we are unable to say which of the several issues raised constituted the basis for the judgment. The face of the record does not disclose that fact nor was there extrinsic proof to establish it. We think, therefore, that the Russell Case is controlling and that the judgment in the second case is not res adjudicata as to the issues here presented.

■ Assuming, but not admitting, that the second judgment was res adjudicata as to the issue here, and that that court by its judgment did construe the last contract favorably to appellant's contention, the bur-

Jen was still upon him to prove that the features of which he complains were novel. We find nothing in the record to prove, or that tends to prove, that appellant's new model machine had elements of novelty not included in the issued patents.

We adhere to our former opinion with respect to the construction of the contract in suit. The conclusions of the District Court are sound and are supported by the facts.

Decree affirmed.