WEBB et al. v. SMITH et al.

No. 33595.    March 7, 1950.
Rehearing Denied April 18, 1950.

*216 P. 2d 968.*

Arthur G. Croninger, of Miami, for plaintiffs in error.

Nesbitt & Nesbitt and Perry Porter, all of Miami, for defendants in error.

WELCH, J. O. L. Smith and Cleora Lee Smith instituted this action against L. G. Webb and Russell Doss, county treasurer, to quiet title to real estate as against a tax sale certificate.

There is no dispute as to the facts in the case.

The real estate involved consists of certain city lots located in the city of Miami, Ottawa county, and included in paving District No. 9 and in paving district No. 30 in said city. Separate special assessments were levied against the lots to secure the payment of two separate bond issues; an issue of District No. 9 paving bonds and an issue of District No. 30 paving bonds. The bonds were not paid at maturity. In settlement of the District No. 9 obligations refunding bonds were issued and reassessments made against the property. The reassessments became delinquent, and after maturity date of the refunding bonds, the bondholder commenced action in foreclosure. The suit was filed in United States District Court and judgment and decree in foreclosure was entered in March, 1941. Thereafter, the lots were sold under the judgment. On April 10, 1943, the purchaser at judicial sale conveyed the property to the plaintiffs.

On June 20, 1946, the county treasurer of Ottawa county issued and delivered a "County Treasurer's Certificate of Tax Sale by Assignment" to the defendant, L. G. Webb.

The certificate describes the real estate that is here involved and recites that the property was offered for sale for delinquent taxes on November 7, 1938; that no one offered to bid the amount due thereon and that the same was bid off in the name of the county for the delinquent taxes for the years, classes and amounts therein scheduled.

It is admitted that the taxes listed in the schedule are the special paving assessments of District No. 30.

The defendant Webb, owner of the tax sale certificate, gave notice of intention to apply for tax deed thereunder. Thereafter, the plaintiffs commenced this action.

At the trial of the case no attack was made on the tax sale certificate in reference to its form and execution. The plaintiffs offered in evidence a copy of the judgment roll in the Federal court case and rested their claim to judgment thereon under a plea of res judicata.

Findings of fact and conclusions of law were made and entered by the trial court herein. The following conclusions were stated:

"No. 3. That the tax certificate issued by the County Treasurer of Ottawa County, Oklahoma, on June 20, 1946, and assigned on the same date to the defendant, L. G. Webb, was fully adjudicated in case No. 364 in the United States District Court, wherein the effect of said holding was that the tax sale of November 7, 1938, was illegal and void. . . .

"No. 4. That the action in the Federal Court in Case No. 364, herein referred to, involved the same parties or their privies, the same subject-matter, the same cause of action in reference to the tax sale and the tax sale certificate and lien created thereby as is involved in the case at bar, and that said adjudication was *res judicata*. (Emphasis ours)

"No. 5. That the tax sale certificate issued by the County Treasurer of Ottawa County, Oklahoma, on June 20, 1946, and assigned on the same date to the defendant, L. G. Webb, is not a lien on the property in question in this action which would entitle him to proceed thereon and procure a tax deed against the real estate in question herein, but amounts to a cloud on the title to the real estate involved in this action, and said tax sale certificate should be canceled.

658

" . . .

"No. 7. The court further concludes as a matter of law that case No. 364 in the Federal Court hereinbefore referred to, pleadings, findings of fact and conclusions of law, and judgment therein, is not *res judicata* on the matter of the validity of the assessments as taxes which had accrued in District 30, and the court affirmatively states, that the question as to the validity of such assessments as taxes is not passed upon in this action."

Judgment was rendered for the plaintiff, quieting title to the lots involved in plaintiffs as against the defendant L. G. Webb, and for cancellation of the tax sale certificate.

Defendants, on appeal, contend:

"1. The District Court erred in holding and adjudging that the judgment in Federal Case 364 was *res judicata* of the invalidity of the 1938 county tax sale. (Emphasis ours)

"2. Said District Court erred in rendering judgment in favor of the defendants in error cancelling the tax certificate in question and quieting the title of the defendants in error against the tax certificate of the plaintiff in error L. G. Webb."

The county treasurer was a party defendant in the Federal court case. The tax sale certificate was issued long after the judgment and sale in Federal court, and the precise question here presented is whether or not in the Federal court case there was an adjudication that the tax sale of November 7, 1938, was illegal and void.

In the Federal court case the journal entry of judgment or final decree reflects that the plaintiff relator therein, the owner of the District No. 9 refunding bonds, was granted judgment for the amounts of the certain reassessments made against the property to secure the payment of the District No. 9 refunding bonds and for costs, with provision for sale of the property by an officer of the court if the judgment was not paid within a prescribed time.

The existence or nonexistence of other assessments or taxes against the property is not mentioned in the decree and there is no reference to a sale of the property for delinquent taxes by the county treasurer.

In examining the record of the Federal court proceedings the following paragraph from the complaint filed in that case is noted:

"Relator further states that, defendant, Ottawa County claims some interest in . . . (the property herein described) . . . which relator is informed and believes and therefore alleges arises out of a certain purported tax sale heretofore held in November, 1938, by the County Treasurer of said County; that no tax sale certificates have been issued by said County Treasurer pursuant to such tax sale as by law required; that said tax sale was and is illegal and void and vested no right, title or interest, either legal or equitable, in said property in said defendant county."

Otherwise than as quoted above, the words "tax sale" do not appear in the record of the Federal court proceedings, nor is there any direct reference to any proceeding by the county treasurer affecting the property involved.

As applicable to matters reflected in the judgment roll of the Federal court case, the defendants cite the following rule:

"The conclusiveness of a judgment extends only to the question directly in issue, and not to any incidental or collateral matter, though it may have arisen and been passed upon." In re Assessment of First National Bank of Chickasha, 93 Okla. 233, 220 P. 909.

Defendants further assert that the validity of the 1938 tax sale was not passed upon in the Federal case.

Plaintiffs invoke the following general rule:

"A final judgment of a court of competent jurisdiction is res judicata between the parties and their privies in a subsequent action, not only as to all

matters litigated and determined in the former action, but also as to all matters germane to issues which could have been litigated therein." Covington v. Anthony, 191 Okla. 266, 128 P. 2d 1012; Crockett v. Root, 194 Okla. 3, 146 P. 2d 555; Home D. Co. v. Hankins, 195 Okla. 632, 159 P. 2d 1013.

The seeming conflict in the above general rules and their application as urged by the parties is resolved in the distinction between judgments as an absolute bar to a subsequent action, and as a conclusive adjudication of some evidentiary fact common to both actions.

In Cromwell v. Sac County, 94 U. S. 351, 24 L. Ed. 195, it is said:

"There is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action. In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. . . The language, therefore, which is so often used, that a judgment estops not only as to every ground of recovery or defense actually presented in the action, but also as to every ground which might have been presented, is strictly accurate when applied to the demand or claim in controversy. Such demand or claim, having passed into judgment, cannot again be brought into litigation between the parties in proceedings at law upon any ground whatever. But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all

cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action."

In the Federal court case, here relied on, the cause of action was for foreclosure of District No. 9 reassessment liens against the property. In the instant case the plaintiffs sought to quiet title to the property against lien claims for delinquent District No. 30 assessments, or particularly against the tax sale certificate evidencing such lien claims. Right to judgment herein was bottomed on the establishment of the conclusiveness of the judgment rendered in the Federal case as to the invalidity of the District No. 30 assessment liens or particularly as to the invalidity of the delinquent tax sale, the subject of the certificate.

The causes of action were not the same and the rule here to be applied is that the decree in the Federal case is conclusive only of the question or questions, if any, actually litigated and determined in that case which are common to the two cases.

The statement in the complaint filed in the Federal court case, that the November, 1938, tax sale was and is invalid, is but a bare allegation of a conclusion of law and of itself raised no issue therein.

"Allegations which stand as mere averments of conclusions of law or legal conclusions are, as a pleading, of no legal effect or significance and are generally ignored in the constructions and considerations of the pleadings of which they are a part." 41 Am. Jur. Pleadings, §16.

We have hereinbefore noted that the final decree in the Federal court case contains no mention of the November, 1938, tax sale.

"As a general rule, judgments are to be construed like other written instruments. The determinative factor is the intention of the court as gathered from all parts of the judgment itself. In applying this rule, effect must be given to that which is unavoidably and necessarily implied in a judgment, as well as to that which is expressed in the most appropriate language. Such construction should be given to a judgment as will give force and effect to every word of it, if possible, and make it as a whole consistent, effective and reasonable. . . ." 30 Amer. Jur., Judgments, §31.

The statutes which authorize the creation of street improvement districts, and the levy of special assessments against property located therein, provide that the lien of the assessments shall be co-equal with the lien of ad valorem taxes and provide for the enforcement of such assessment liens by suit in district court or by proceedings by the county treasurer in the same manner as provided for the enforcement of the lien of ad valorem taxes. The statute places no limitation on the creation of improvement districts so as to prevent identical property from being charged with assessments of more than one district, and makes no distinction between districts as to the quality of special assessment liens. The mere fact that property is charged with the separate levies or assessments of each of two districts does not in itself create a question of priority of assessment liens nor create a question as to the validity of one or the other district's levies. It is apparent that an action for the foreclosure of special assessment lien against a property does not necessarily bring in question the existence and validity of other assessment liens against the property, or necessarily challenge the validity of another proceeding for enforcement of other assessment liens against the property. It follows that a judgment for forecloseure of particular assessment liens is not, in unavoidable and necessary implication, an adjudication of the invalidity of other proceedings for enforcement of other assessment liens.

In the suit to establish and foreclose the liens of the District No. 9 assessments against the property, the invalidity of the 1938 sale for delinquent taxes was not a premise essential to a recovery and is not a matter which is unavoidably and necessarily implied in the judgment rendered.

In the absence of proof that the particular issue of the invalidity of the 1938 sale was actually tried and determined in arriving at the judgment in the Federal court case, the judgment herein must be reversed.

The judgment is reversed.